Cunningham v. Anderson.

CUNNINGHAM, *Appellant*, v. ANDERSON.

DIVISION ONE.

1. **Administration Sale:** ORDER OF PUBLICATION. An order of publication is essential to give a probate court jurisdiction to order the sale of land for the payment of debts.

2. —— : ORDER OF APPROVAL : VOID SALE. While an order approving the sale may cure irregularities, it cannot by retroactive effect impart validity to a void sale.

3. —— : PURCHASER FAILING TO SECURE TITLE : REIMBURSEMENTS. Although a purchaser of land sold at an administration sale for the payment of debts fails to acquire title because of misdescription of the premises, yet he will have an equity to be reimbursed for the payment of purchase money which was applied to the extinguishment of the decedent's debts, 'and for taxes paid and improvements made in good faith.

*Appeal from Pemiscot Circuit Court.*—HON. H. C. O'BRYAN, Judge.

AFFIRMED.

*Carleton & Roberts* and *J. B. Dennis* for appellant.

(1) The order of the probate court of Pemiscot county, disapproving the report of sale, made by Mrs. Edsall, administratrix, etə., to defendant herein, rendered the sale absolutely void, and the purchaser acquired no title thereby to any land so sold. R. S. 1879, secs. 167 and 168. *Castleman v. Relfe*, 50 Mo. 583. (2) Mrs. Edsall, administratrix, having given the proper notice of her intention to apply for an order of sale of the realty, to pay the debts of her intestate, the heirs and all persons interested in the estate were duly and legally notified, and the probate court thereby acquired jurisdiction of the matter, and had the lawful authority to sell a part, or all, of said realty until the debts were paid, or the realty exhausted, without any additional notice, of "an intention to apply for an order of sale." R. S. 1879, sec. 149; *Pattee v. Mowry*, 59 Mo. 161; *Grayson v. Weddle*, 63 Mo. 523; *Jackson v. Magruder*, 51 Mo. 55. (3) The notice of the administrator *de bonis non*, of an intention to apply for an order of sale, if necessary, was fairly given, and an order of publition was made as to all of the realty of Edsall's estate. No notice of his second application was necessary; otherwise where lands are sold at different times, an ordinary estate would pay heavy and useless bills for "publication" and other proceedings. When the second application for an order of sale was refused, the administrator appealed his case and the case was reversed and remanded—the courthouse and records were destroyed by fire—and as soon as he could do so, the administrator had his cause reinstated, and the order of sale made. *Ferguson v. Carson*, 86 Mo. 673; *Ruggles v. Webster*, 55 Mo. 246; *Gunby v. Brown*, 86 Mo. 253. (4) The equity, attempted to be set up on the trial by defendant, was inadmissible. Defendant attempted by parol testimony to substitute for the realty described in his deed a two-acre tract about

which no mention of any kind seems to have been made in any of the proceedings before the court, and none whatever in his deed. Also to substitute lands different from those described in his deed, lands belonging to a dead person's estate, about which "no notice of sale" had been given. This was in direct conflict not only with all of the elementary authorities, but the spirit of the decision of this court in *Schwickerath v. Cooksey*, 53 Mo. 75, and cases following it. 1 Greenl. on Ev., sec. 301, p. 345. (5) The declarations of law, given by the court for plaintiff and defendant, were inapplicable to this case. And the third declaration given for defendant was not authorized or supported by any evidence in this case.

*R. B. Oliver* for respondent.

(1) It is a fundamental rule in ejectment, that the plaintiff must recover upon the strength of his own title. He cannot depend upon or show the imperfections of the defendant's title. *Large v. Fisher*, 49 Mo. 307; *Foster v. Evans*, 51 Mo. 39; *Robbins v. Eckler*, 36 Mo. 494; Sedgwick & Wait on Trial of Title to Land [2 Ed.] sec. 57, p. 29. (2) Appellant's title is dependent upon the order of sale made by the probate court. That order of sale was made without notice or order of publication to "persons interested in the estate." The order of sale is absolutely void, and the deed accepted by appellant is, therefore, worthless. R. S. 1879, sec. 148; *Ferguson v. Carson*, 86 Mo. 673; *Valle v. Fleming*, 19 Mo. 454; 2 Am. Law of Admin. (Woerner), sec. 476, pp. 1029, 1030.

SHERWOOD, P. J.—This action of ejectment for lands in Pemiscot county grows out of two administration sales or attempted sales of such lands, the manner of making which and other attendant circumstances will hereinafter sufficiently appear.

The lands belonged to the estate of Jas. R. Edsall. His widow, Charlotte, became the administratrix, and upon her application the land in controversy was duly ordered to be sold. Whether the order embraced other lands does not appear, and every step taken down to, and inclusive of, the order of sale being in conformity to law, and the land aforesaid correctly described, but in the notice of sale the land was misdescribed, that is the number of the *section* was given as section *13*, instead of section *31*. This order of sale, it seems, was made in 1876, and at the sale which occurred in the next year the land was cried according to such misdescription and sold in that way, though it was mentioned, also, by the auctioneer at the sale as the "*Mound farm*," a name by which it was commonly known. Anderson, the defendant, bought the land at the sale, paid the price of his bid, $400, and received a deed duly acknowledged before the probate judge ; but this deed, as well as the report of sale, still kept up the misdescription aforesaid, by locating the land in section *13*, instead of section *31*. This sale was approved in open court, and such approval was entered on the minutes ; but some days after court adjourned, and when entering the matter of record the mistake was discovered, and an order made *in vacation* disapproving the sale, and a similar entry was made on the report based upon the ground that the notice of sale did not comply with the order of the court, and signed by the probate judge, but this was after the deed was made and delivered and payment of the purchase money, which money was applied in the payment of the debts of the deceased, Franklin Cunningham, one of the creditors, receiving, it seems, a portion of such disbursements. Anderson entered upon the lands purchased, and has remained there ever since, making valuable improvements by clearing and fencing lands, paying taxes, etc.

Mrs. Edsall made final settlement and resigned her administration, and there still remaining debts unpaid,

said Franklin Cunningham was appointed adminis-
trator *de bonis non.* This was in 1879 or 1880. On
being qualified he presented his petition for the sale of
all of the lands for the payment of debts, and notice
was duly given under order of the court for the sale of
all of the lands of the estate for the payment of debts;
but when the court came to make the order of sale the
land in controversy was excluded from such order, and
the lands embraced in the order were sold by Cunning-
ham. A year or so afterwards Cunningham again
applied by *original* petition for the sale of the land in
controversy; but the probate court refused to make
such order on two grounds: *First,* because there had
been no order of publication made; and, *second,* because
the records showed the land had already been sold, and
payment made therefor, etc.

About a year after this application was denied,
from which no appeal was taken, Cunningham made
another similar application for the sale of the land in
litigation, but this application was denied on similar
grounds; but on appeal taken to the circuit court the
judgment of the probate court was reversed, and that
court ordered to make an order of sale, which it did,
but without any order of publication, and thereupon
the land was sold and deed made to the plaintiff, the
purchaser. Aside from the point of lack of order of
publication the proceedings resulting in the last sale
were legal. In 1882 the records of the probate court
were destroyed by fire, and the last sale took place in
1883, and, the report of the sale being approved,
Cunningham made a deed to plaintiff in 1885.

I. Though the order of publication made in 1879
on the application of Cunningham was sufficiently
comprehensive to embrace all the lands owned by the
deceased at his death, yet the probate court refused to
order the sale of the land in controversy, and the power
and jurisdiction of the probate court was *exhausted and*

*spent its force* in making the order of sale which followed the order of publication. Under the terms of section 149, Revised Statutes, 1879, it was within the judicial discretion of the court to "make an order for the sale of such real estate or any part thereof;" but it declined to make an order sufficiently comprehensive to embrace the land in suit. When all parties in interest are notified by publication to appear and show cause, etc., and they do appear in obedience to such notification, and the probate court makes an order of sale directing that only a portion of the land of the estate be sold, they may well presume that this land thus ordered to be sold will be sufficient for the payment of debts; or, if not sufficient, that additional notice will be given, and this the law requires. 2 Woerner Am. Law of Admin. 1049–1052; *Ackley v. Dygert*, 33 Barb. 176.

II. If the order of sale in the present instance had been as comprehensive as the order of publication a very different question would be presented, one not necessary to be now considered.

As no order of publication was made, the probate court acquired no jurisdiction to order a sale of the land in suit; and this conclusion is not at all affected in consequence of the judgment of the circuit court directing that an order of sale be made. *It was beyond the power of the circuit court to make such an order;* and by that mere order no jurisdiction could be conferred where none existed before. Upon this branch of this cause, and for the reasons given, we hold that no title was conveyed to plaintiff by reason of the sale made by the administrator *de bonis non.*

III. It is claimed by plaintiff, that notwithstanding the facts aforesaid, that the order approving the sale made by the administrator *de bonis non* cured any previously occurring defective proceedings, if any there were. This is a misapprehension. While perhaps an order of approval may cure certain irregularities, it

cannot by any retroactive effect impart validity to a void sale. *Farrar v. Dean*, 24 Mo. 16.

IV. Again, even if it be true that the defendant gained no title, either legal or equitable, by his purchase owing to the misdescription of the land, yet he undoubtedly acquired a clear equity to be reimbursed for his payment of the purchase money which went in extinguishment of the debts of the estate, and for taxes paid, and improvements made, if made in good faith, and until thus reimbursed the plaintiff in any event should not in equity and good conscience be permitted to recover the land in suit, even if he had acquired the legal title. *Schafer v. Causey*, 76 Mo. 365, and cases cited; 2 Woerner Am. Law Admin. 1080, 1081.

But it has been held that if the misdescription were merely such as not to mislead purchasers, that this would not prevent the passing of the *legal title*. 2 Woerner Am. Law Admin. 1052, 1053. It is unnecessary, however, to rule these points definitely at the present time, as the defendant is not appealing.

The conclusion from the premises is that the judgment be affirmed. All concur.